**DUO–FLEX CORPORATION, a Nevada Corporation,**

v.

**BUILDERS SERVICE COMPANY et al.**

Civ. A. No. 4337.

United States District Court
N. D. Texas,
Fort Worth Division.

June 29, 1962.

---

William H. Pavitt, Jr., Smyth, Roston & Pavitt, Los Angeles, Cal., Howard E. Moore, Dallas, Tex., for plaintiff.

Tom Arnold, Arnold & Roylance, Houston, Tex., Wm. T. Wofford, Wofford & Richards, Fort Worth, Tex., for defendant Builders Service Co.

Charles Stephens, Cantey, Hanger, Johnson, Scarborough & Gooch, Fort Worth, Tex., for defendant First Nat. Bldg. Corp.

BREWSTER, District Judge.

### FINDINGS OF FACT

I find:

1. Plaintiff, Duo-Flex Corporation, is a Nevada corporation with its principal place of business in Los Angeles, California.

2. Defendants are Builders Service Company and First National Building Corporation, and both are Texas corporations with principal places of business in Fort Worth, Texas.

3. Both defendants are charged with infringement of a United States patent No. 2,742,122, entitled "Acoustical Ceiling Construction" and issued April 17, 1956 to plaintiff, as assignee from the inventor John E. Stanley.

4. Plaintiff has been the owner of said patent at all times material hereto.

5. The alleged infringements by Builders Service complained of herein are two: First, certain suspended acoustical ceilings installed in 1960–1962 in the then new First National Bank Building in Fort Worth, Texas, and second, certain suspended acoustical ceilings installed in 1961–1962 in the then new Equitable Savings Association Building in Fort Worth.

814

6. Defendant, First National Building Corporation, is charged with infringement in the structure of said suspended acoustical ceilings installed in 1960–1962 by defendant Builders Service Company, in the First National Bank Building then under construction in Fort Worth, Texas.

7. The invention of the patent-in-suit involves a suspended ceiling structure which is described in detail in the file wrapper and patent admitted in evidence.

8. The ceiling structure of the patent-in-suit comprises an arrangement of suspended main support panel members, auxiliary support members called "T-splines", and ceiling tiles, each being of particular specified character and having a described relationship to each other, whereby they cooperate to form an integral suspended ceiling structure.

9. Each of the five claims of the patent-in-suit describes the invention in slightly different wording to cover the features of the invention.

10. Among the features of the ceiling structure of the patent-in-suit are:

(a) Simplicity and ease of installation;

(b) Easy removal and replacement of the tiles to the service area above the tiles (the plenum);

(c) Use of standard components such as T-splines and tiles;

(d) A neat ceiling appearance;

(e) Adaptability to incorporation of lighting fixtures and air conditioning vents and ducts;

(f) Modular unit construction;

(g) Stability;

(h) Prevention of tile sagging;

(i) Flush mounting of tiles with support members to facilitate sealing of rooms over vertical partitions.

11. None of the ceiling structures shown or described in the prior art patents or publications placed in evidence by defendants attained all of these said features.

12. None of the said patents other than the patent-in-suit discloses the exact structure of any of the five claims of the patent-in-suit.

13. None of the claims of the patent-in-suit may properly be read upon the structures shown or described in any prior patent in evidence in this case.

14. The differences between the subject matter described in each of the five claims of the patent-in-suit and what is disclosed by the prior art, as evidenced by the patents and publications cited and introduced into evidence by defendants, or otherwise described by any witnesses, or disclosed by other evidence, of defendants, are such that, at the time the invention of the patent-in-suit was made, the subject matter of said invention as a whole would not have been obvious to a person having ordinary skill in the art to which such subject matter pertains.

15. Specifically, the invention of the Stanley patent-in-suit would not be obvious to any person having ordinary skill in the ceiling art in 1951 or 1952 (when the Stanley invention of the patent-in-suit was made), and having knowledge of the disclosures of the patents to Rader (No. 714,948), Brown (No. 1,992,054), Olsen (No. 2,318,092), and two Jacobson patents (Nos. 2,667,667 and 2,648,102), and of the other patents and publications placed in evidence by defendants, or of any structures in public use prior to 1952.

16. Structures in accordance with the patent-in-suit have been incorporated in a substantial number of large buildings erected since 1952 in Southern California, and in other states of the United States. The plaintiff, at the time of the filing of this suit, enjoyed about one per cent of the acoustical ceiling market in the United States.

17. Defendant, Builders Service Company, at the time of the design of the accused structures, had available to it architect's plans prepared on the basis of suggestions of one of plaintiff's then franchised dealers, of a structure to be

erected in accordance with the patent-in-suit.

18. Despite the availability for many years of the teachings of most of the patents relied upon by defendants, no one, prior to John E. Stanley, devised the exact ceiling structure disclosed and claimed in the patent-in-suit. There is no evidence of any prior attempt, successful or unsuccessful, so to do.

19. Over a hundred thousand dollars worth of that patented assembly and many hundreds of thousands of square feet of that patented ceiling have been sold by plaintiff (the tiles proper being often supplied by other suppliers) every year since the patent-in-suit issued, and that patented assembly and the parts thereof are capable of being marked with the patent number, as for example on the side faces, shoulders or inset faces of main support panels.

20. Plaintiff and its franchised dealers ordinarily sell only the special panel members and clip means for suspending them from C-channels, leaving the installing contractor to purchase from whatever source he may desire the standard tile, T-spline and anti-breathing spline components.

21. Plaintiff has, since December, 1956, marked all cartons in which it has sold said special panel members and clip means, with the number of the patent-in-suit. Between the issue date of the patent and December, 1956, some of the sales of such items were in cartons bearing the notation "Patent pending", but a substantial amount of such items was sold during such period before December, 1956 without the patent number being marked on any of the components of the ceiling or upon the cartons in which such components were sold.

22. Defendant, Builders Service Company, was in no way prejudiced by plaintiff's failure to mark its cartons with the number of its patent-in-suit between April, 1956 and December, 1956.

23. By August, 1959, defendant, Builders Service Company, was aware of the existence of the patent-in-suit and the possible claim by plaintiff that said patent covered the ceiling structure originally specified by the architect.

24. Defendant, Builders Service Company, received written notice from plaintiff on September 30, 1960, that plaintiff was asserting a claim of infringements of the patent-in-suit against both defendants.

25. By September 30, 1960, all the design work for the accused structures, all the expensive bid and contract work, and most of the material acquisition had been accomplished for all of the accused structures. The ceilings in the First National Building were 75% completed by then. The Equitable Savings Association job had been five per cent completed by September 30, 1960.

26. The contracts and work on both jobs was so far gone as to constitute completion of the acts of alleged infringement, had any occurred, in the sense that there was no reasonable and practical turn-back available after the notice of infringement was received September 30, 1960.

27. Plaintiff brought this action in good faith to enforce what it reasonably believed to be a sustainable claim of infringement of the patent-in-suit, found herein by the Court to be valid.

28. Defendant, First National Building Corporation, is and was the owner of the new First National Bank Building in which certain of the accused structures were installed by defendant, Builders Service Company. Defendant, First National Building Corporation, was not a manufacturer or installer of the accused structure, but rather was only a customer for and purchaser of the accused structure.

29. The accused ceiling structure comprises the assembly of:

(1) main support bulb T members held in spaced parallel relationship, the spacing being alternatively a spacing for air conditioning grills and a spacing for ceiling tiles;

(2) cross T auxiliary support splines riding above shoulders of

the tile-spaced alternative pair of said main support bulb Ts and being supported through the edge of the air conditioning grills by said shoulders;

(3) removable air conditioning grills dependent from the grill-spaced alternative pair of said main support bulb Ts;

(4) tiles in adjacent abutting pairs with (a) kerfs in the abutting end faces of said tile pairs, (b) substantial steps or lips along the non-abutting end faces of said tiles which steps overlap and are masked by a portion of said main support bulb Ts, but said steps performed no function of sealing; and (c) kerfs also in the transverse side faces of said tiles into which are embedded said cross T auxiliary support splines;

(5) flat splines embedded in said end face kerfs and riding upon the top of said cross T splines supporting the tile abutting edges with respect to each other and supporting them upward from said cross T splines.

30. The tile tongues of defendants' structure which extend over the shoulders of the main support panel assemblies do not effect any sealing of the ends of the tiles against said shoulders, and hence, do not perform the same function as the anti-breathing splines recited as elements in claims 1 and 5 of the patent-in-suit.

31. The ceiling tile had no support on the tile lip of defendants' structure; and there was no air seal or anti-breathing function between such tile and tile lip. The clearance between the tile lip and the tile was enough to allow the insertion of a folded manila folder of the type commonly used in office files, and to permit the passage of cigarette smoke with ease.

32. Claims 1 and 5 of the patent include among other limitations, detailed requirements of flat splines resting one longitudinal half upon the main support panel and half in tile kerfs at places where the accused structure has only a

step. The function of these flat splines is to prevent breathing or air passage between the main support panels and the tile faces abutting the main support panels. No substantially similar arrangement is to be found in the accused structure, and breathing does readily occur between the accused structure's tiles and main support members.

33. In the accused structure each tile is of length longer by a substantial step or lip than half the distance between the adjacent outermost side faces of the main support bulb Ts; or if they are viewed in pairs, the tile pairs are longer by two substantial steps or lips than the distance between the adjacent outermost side faces of the main support panels. These substantial step tile portions overlap and are masked by shoulders on said main support bulb Ts exactly to the same substantial extent as such tile portions overlap and are masked by shoulders of main support members in such prior art references as some embodiments disclosed in the two Jacobson patents 102 and 667 and Brown. These steps do not effect any anti-breathing air seal and are substantially different structures from flat splines.

34. The tiles are at their ends where the pairs abut, supported into alignment with each other and supported above the auxiliary support cross Ts by the flat splines and hence the tiles are not solely supported by the cross T splines.

35. The accused structure is supported by bulb Ts which are not hollow for any functioning purpose within the meaning of the patent-in-suit. A grill which can be removed without the tiles falling down covers the space between the grill-spaced pair of bulb Ts just as the tiles which can be removed without the grill falling down cover the space between the tile-spaced pair of bulb Ts. But neither tiles nor grill are support members, both are supported members only. The accused structure does not, therefore, have hollow support members.

36. Defendants' cross Ts are identical in structure and use to T-splines shown

in the prior art, and are admitted to have been stock items off the supplier's shelf, even prior to the date of the alleged invention.

37. Defendants' support members—the bulb Ts which carry all the weight of the ceiling proper—are conventional standard-stock prior art members conventionally employed by defendants to support tile ceilings.

38. Defendants' flat spline between two adjacent tiles is admittedly a stock item used in its pre-Stanley conventional manner by defendants.

39. Defendants' grill for air conditioning passage, may not be a stock configuration, but was nevertheless a concept and item in ceilings prior to Stanley's work, and is used for the purpose and function of similar grills of similar configuration prior to Stanley.

40. Defendants' "furring C channels" from which the whole ceiling is suspended, is a pre-Stanley conventional standard part used by defendants in the pre-Stanley conventional, standard way for the pre-Stanley conventional standard purpose and result.

41. Each of three references, namely Brown 1,992,054, Jacobson 2,667,667 and Rader 714,948, relied upon by defendants during trial, discloses a structure somewhat different from the disclosures applied by the examiner against the application that matured into the patent in suit.

42. There was no willful or deliberate intention on the part of any of the defendants to infringe any patent right of plaintiff. Defendant Builders Service Company on or about November 2–4, 1959, received bona fide opinions from competent counsel that the patent-in-suit was both invalid and not infringed by the accused structure. Such opinions were based upon searches of the art and consideration of the claims of the patent in the light thereof and it was reasonable for Builders Service Company to rely in all its transactions material hereto upon a presumptive correctness of those opinions. All of the acts of each defendant were done in the good faith belief that no infringement of any right of plaintiff was being committed.

43. First National Building Corporation contracted, reasonably, with the general contractor on its new building, for that general contractor to indemnify it and hold it harmless from any charges of patent infringement that might arise out of the construction of its building, and subsequent disregarding of patent complications by First National Building Corporation was both reasonable and prudent and does not constitute deliberate or willful infringement of any patent right, recognized or unrecognized.

44. Defendant Builders Service Company has contracted in turn to indemnify and hold harmless the general contractor, insofar as any charges of patent infringement might arise out of its sub-contract, and is ultimately liable for all infringement, if any there had been, of plaintiff's patent rights herein.

## CONCLUSIONS OF LAW

I conclude:

1. This Court has jurisdiction of the parties and of the subject matter of this cause of action, and venue herein is proper.

2. Defendants have not overcome the statutory presumption of validity of the patent-in-suit.

3. The patent-in-suit and each of the claims thereof are valid.

4. Plaintiff has adequately marked the products sold under its patent-in-suit.

5. The accused structures do not infringe any of the five claims of the patent-in-suit.

6. All affirmative relief asked for by any of the parties should be denied, with the exceptions that the patent-in-suit should be declared valid and the costs should be taxed against the plaintiff.

7. Judgment shall be entered in accordance with these conclusions of law.